UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

TIMOTHY BROOKS WHITT,

    Plaintiff,

v.

MRS. FASHOLA and
JCI NURSE ARIEL,

    Defendants.

Civil Action No. TDC-22-2302

MEMORANDUM OPINION

Timothy Brooks Whitt, an inmate incarcerated at the Jessup Correctional Institution ("JCI") in Jessup, Maryland, has filed this civil action in which he alleges pursuant to 42 U.S.C. § 1983 that he has been denied adequate medical care in violation of his constitutional rights and asserts various state law claims. Defendants Fate Fashola, a Registered Nurse referred to in the Complaint as "Mrs. Fashola," and Arielle Horton, a Licensed Practical Nurse referred to in the Complaint as "JCI Nurse Ariel," have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Although Whitt was informed of his right to file a memorandum in opposition to the Motion, he has not done so. Having reviewed the submitted materials, the Court finds that no hearing is necessary. See D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

**BACKGROUND**

**I.  Medical Treatment**

Beginning in April 2022, Whitt, who has a medical history of hypertension, migraine headaches, obesity, and Hepatitis C, began experiencing intense back and leg pain. At the time,

he was already receiving pain medication pursuant to a chronic care plan, including Tramadol, Tylenol, and Excedrin Migraine, as well as the muscle relaxant Robaxin. Between April 29, 2022 and May 30, 2022, Whitt submitted four sick call requests in which he sought to be examined by a medical provider. According to Whitt, he did not see a medical provider until May 30, 2022, when Nurse Sanya Adebayo examined him, noted his complaint of lower back pain and his history of spinal stenosis, and counseled him to use his pain medication as ordered by the physician.

The next day, on May 31, 2022, Whitt was seen by Nurse Practitioner Bernard Alenda. After Whitt, who was using a cane, reported that he had shooting pain down his legs, that he could "hardly walk," and that his foot and groin would sometimes go numb, ARP at 3, Mot. Ex. B-1, ECF No. 18-9, Alenda concluded that Whitt had unspecified dorsalgia and prescribed the additional muscle relaxant Baclofen for neuropathic pain.

On June 2, 2022, while in the mess hall, Whitt started experiencing such intense pain that he began crying, rocked back and forth, and could not speak. Correctional officers obtained a wheelchair, escorted Whitt to the medical unit, and told the medical staff member that Whitt needed to be seen. According to Whitt, after waiting for two hours, he was advised to return to his housing unit and told that he would be called to the medical unit when a provider was ready to see him. Whitt returned to his housing unit but was not called back for a medical examination that night and slept in his wheelchair.

On June 4, 2022, Whitt returned to the medical unit and was seen by Nurse Adame, who provided a muscle rub for his lower back and gave Whitt a sick call pass that would allow him to return to the medical unit on Monday, June 6, 2022. On June 5, 2022, Whitt began experiencing lower extremity numbness and burning sensations on his legs and genitals.

On June 6, 2022, Whitt was taken to the medical unit but was told to return the next day because there were no available medical providers. Whitt asserts that on June 7, 2022, he was told by Defendant Nurse Horton that he would be scheduled to be seen on June 8, 2022, and that he would receive a medical pass that evening to be used the next day. According to Whitt, he did not receive the medical pass, but with assistance from correctional staff he was taken to the medical unit, at which point he was informed that Horton had not requested a medical pass for him.

Meanwhile, according to his medical records, Whitt was seen by Nurse Victoria Olaniyi and Nurse Practitioner Ikanke Edem on June 7, 2022 for an unscheduled visit after Whitt had fallen from his wheelchair and another inmate had carried him to the medical unit for examination. During that visit, Whitt reported that he was in severe pain and that he had fallen on his left hip but that the pain was worse in his right hip. Edem ordered an intramuscular injection of a nonsteroidal anti-inflammatory drug and x-rays of Whitt's hips.

On June 8, 2022, Alenda made a request for Whitt to receive an on-site consultation with an orthopedist. Alenda noted Whitt's inability to walk for the prior six days and the pain that he was experiencing in his thighs that worsened when he attempted to stand. On June 9, 2022, Whitt received x-rays of his hips, which showed no fractures, dislocations, or acute abnormalities.

On June 12, 2022, Whitt was seen by Nurse Mariama Coker after he fell out of his wheelchair. Where Whitt did not have signs of injury, Coker advised him to continue with his pain medication and to return to the medical unit if his symptoms worsened.

On June 13, 2022, Whitt filed an Administrative Remedy Procedure request ("ARP") in which he complained about the lack of medical care he was receiving for his lower back and leg pain. According to Whitt, after he submitted the ARP, he met with Defendant Nurse Fashola, who told him not to submit any more ARPs and that she would make sure that doctors' orders were

followed and that he received the proper diagnostic tests. In Whitt's view, Fashola did not follow through on that assurance, even after he submitted follow-up letters to her.

On June 15, 2022, Utilization Management ("UM"), the office within the prison medical care system that considers requests for consultations, denied Alenda's June 8, 2022 request that Whitt receive an orthopedic consultation. UM concluded that "medical necessity has not been demonstrated" for an orthopedic consultation and instead recommended an Alternative Treatment Plan ("ATP") under which Whitt would receive "acute management of exacerbation of lumbago with a clinical re-evaluation in 2 weeks and a full neuromuscular examination." Med. Records Pt. 3 at 29, Mot. Ex. A-1, ECF No. 18-5. The recommendation was submitted to the Statewide UM Medical Director for further review.

On June 22, 2022, correctional staff brought Whitt in his wheelchair for an unscheduled sick call due to his complaints of lower back and leg pain and the ineffectiveness of his pain medication. He was seen by Nurse Sabastine Offorji, who prescribed 1000 mg of Tylenol and gave Whitt a pass to meet with a medical provider. On June 28, 2022, however, Whitt did not appear for a scheduled appointment relating to his complaint of back pain.

On June 30, 2022, Whitt was seen by Dr. Hamid Kiabayan on a chronic care visit for a pain management consultation. Dr. Kiabayan prescribed Whitt 600 mg of ibuprofen twice per day and a lidocaine patch daily for pain, and he submitted a request for an "[u]rgent MRI," noting that he would closely follow up on the MRI. *Id.* at 21. In his request, Dr. Kiabayan stated that Whitt's symptoms were caused by an injury to his back after lifting a heavy object. He noted that Whitt had severe back pain that radiated to his thigh and numbness in his rectum and genital area, and he also referenced Whitt's inability to walk, his use of a wheelchair, and his inability to sleep in his bed due to pain.

Two weeks later, on July 14, 2022, during a chronic care visit with Dr. Kiabayan, Whitt complained of continued lower back pain with radiation to his legs, ambulatory dysfunction, and the inability to sleep in his bed. Dr. Kiabayan scheduled blood work and a follow-up appointment for swelling that had developed in Whitt's legs. Whitt's prescriptions for Tramadol, Excedrin Migraine, and Baclofen were renewed.

On July 28, 2022, Whitt was seen by Dr. Kiabayan for his follow-up visit, during which Dr. Kiabayan noted that both the orthopedic consultation and the MRI request had been denied by UM in favor of an ATP. Dr. Kiabayan, however, also noted that Whitt had been "using a wheelchair for last 2 months and no idea what is going on and what is causing this pain and weakness." *Id.* at 1. Dr. Kiabayan further noted that Whitt needed to be seen by orthopedic surgery for further evaluation.

On August 17, 2022, Whitt missed a scheduled appointment with Alenda. On October 10, 2022, Whitt saw Dr. Kiabayan for a chronic care appointment and reported that he had back pain that radiated to his legs but that the pain was less severe, he was no longer using a wheelchair, and he was able to sleep. He continued to take his pain medications.

## II.     Defendants

In a declaration submitted with the Motion, Horton asserts that she was a Certified Nursing Assistant ("CNA") during the relevant time period and did not become a Licensed Practical Nurse until May 2023. As a CNA, she was not permitted to provide direct nursing care and did not triage or assess patients' conditions; rather, her role was to schedule patients to see medical providers. She occasionally saw Whitt while she was coming into or leaving work, and when he asked to see a medical provider, she told him that she would contact the chronic care nurse, who scheduled him for multiple appointments. Horton has further asserted that although she told Whitt that making

5

verbal requests for appointments as she was passing by was not the proper process for making a sick call request, she still scheduled him without a formal sick call request on multiple occasions based on the nature of his complaints and stated pain levels.

Fashola has asserted in a declaration that she is a Registered Nurse ("RN") and was the Assistant Director of Nursing at JCI from March 21, 2022 through August 22, 2022, a role in which she served as the senior clinical nurse for JCI. According to Fashola, she met with Whitt on July 5, 2022 to discuss his ARP and believes that she was aware of his back pain, but not that he was unable to walk. She asserts that she did not tell Whitt that he would receive an MRI or any other specific treatment because she did not have that authority, nor could she, as an RN, diagnose any medical condition or formulate treatment plans. Fashola further states that she did not tell Whitt not to write any more ARPs.

### III.    Procedural History

On September 12, 2022, Whitt filed the Complaint in this case in which he alleges that during the time period from April 2022 to the filing of the Complaint, his medical providers acted with deliberate indifference to his serious medical needs, in violation of the Eighth Amendment to the United States Constitution, and that they engaged in medical malpractice (negligence) and intentional infliction of emotional distress. He named as defendants Nurse Fashola, Nurse Horton, and various unnamed JCI medical officials and JCI entities ("the JCI Defendants"). On July 11, 2023, the Court issued an order finding that the claims against the JCI Defendants were subject to dismissal because the allegations against them were insufficiently specific but granted Whitt leave to amend the Complaint. Whitt, however, did not amend the Complaint, so the Court issued an Order on August 24, 2023 in which it ruled that the case would proceed only as to Fashola and Horton ("Defendants"). The present Motion followed.

## DISCUSSION

In their Motions, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. Defendants argue both that Whitt has failed to state a claim against them, and that the record evidence does not provide a sufficient basis to support the claims against them.

## I.     Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

When deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents. *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Here, Defendants have submitted exhibits with their Motion, including their declarations and Whitt's medical records. Courts must treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1)

the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of the Defendants' Motion. To show that a reasonable opportunity for discovery has not been provided, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Because Whitt has not opposed the Motion and has not requested discovery, the Court will construe the Motion as a motion for summary judgment and consider the submitted declarations and exhibits.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with "all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

## II. Eighth Amendment Claim

In the Motion, Defendants argue that Whitt has not alleged or presented sufficient facts to support a claim that either of them provided inadequate medical care in violation of the Eighth Amendment, which protects prisoners from "cruel and unusual punishment" and prohibits "unnecessary and wanton infliction of pain" against inmates. *Gregg v. Georgia*, 428 U.S. 153, 172-3 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). In order to establish an Eighth Amendment claim for inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106. Such deliberate indifference requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the

9

level of deliberate indifference." *Id.* "Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto*, 841 F.3d at 225 (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

A review of Whitt's allegations and the record evidence establishes that Whitt has not provided a sufficient basis to support his deliberate indifference claim against Defendants. While the record is clear that Whitt has an objectively serious medical need, the evidence does not support a finding that either Horton or Fashola were deliberately indifferent to that need.

The allegations up to June 7, 2022 do not relate to any actions or inactions by Horton or Fashola. As to Horton, Whitt alleges that on June 7, 2022, he complained to Horton about his medical needs and that she did not follow through on her statement that she would schedule him for an appointment with a doctor on June 8, 2022 and that he would receive a pass to attend that appointment. Even assuming that Whitt did not receive the medical pass and, as he asserts, was later told that Horton had failed to request that pass, the medical records establish that Whitt actually received medical care on both June 8 and the following day. On June 8, 2022, Alenda examined Whitt and made a request for Whitt to receive an orthopedic consultation, and on June 9, 2022, Whitt had x-rays taken of his hips. Thus, even if Horton failed to arrange for a medical pass or appointment personally, where Whitt actually received medical attention for the relevant condition on the date in question, the Court concludes that the evidence does not support a finding

that Horton acted with deliberate indifference to Whitt's serious medical need. The fact that Whitt may not have received the orthopedic consultation or other procedures such as an MRI does not alter this conclusion, as Horton has provided an undisputed declaration stating that her role was limited to scheduling appointments, and the record evidence establishes that both the requests for those procedures and the decisions on whether to provide them were made by medical providers with authority to make such decisions.

As for Fashola, Whitt's only allegations are that on or about July 5, 2022, after Whitt submitted an ARP in June 2022 and after Dr. Kiabayan had made a request for an MRI following a June 30, 2022 medical appointment, Fashola met with him, told him not to file additional ARPs, and stated that she would make sure that doctors' orders would be followed and that he would receive an MRI and relevant diagnostic tests. Even assuming that Fashola made these statements, the record evidence demonstrates that Fashola had no authority to ensure that particular procedures would be conducted and in fact shows that the orthopedic and MRI consultation requests were presented to and denied by the UM, not by Fashola, Dr. Kiabayan, or any other physician or nurse who examined Whitt. The record also reveals that even after July 5, Whitt continued to receive pain medication and chronic care visits, including two additional follow-up visits with Dr. Kiabayan in July 2022 which resulted in a request for blood work. It therefore does not support a finding that the denials of particular procedures were the result of deliberate indifference by Fashola to Whitt's medical needs. Accordingly, the Court will grant summary judgment to Defendants on the Eighth Amendment claim.

### III.   State Law Claims

In the Complaint, Whitt also makes passing references to claims of medical malpractice, which is a form of a negligence claim, and intentional infliction of emotional distress, both of

which are state law claims. Where the Complaint does not assert that the parties are citizens of different states, and the declarations of Defendants state that they are employed in Maryland and have nursing licenses issued by the State of Maryland, the record provides no basis to conclude that this Court has diversity jurisdiction over these claims. *See* 28 U.S.C § 1332 (2018). Although the Court could exercise supplemental jurisdiction over these claims because they are related to Whitt's federal claim, specifically the Eighth Amendment claim, now that the Court is resolving that claim, it can and will decline to exercise supplemental jurisdiction over these remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). The Court will therefore dismiss any such claims without prejudice for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will be GRANTED in that the Court will grant summary judgment on the Eighth Amendment claim and dismiss the state law claims without prejudice for lack of subject matter jurisdiction. A separate Order shall issue.

Date:  August 28, 2024

THEODORE D. CHUANG
United States District Judge